# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHARLES ARTHUR HINSHAW )
a/k/a CHARLES LEE HAMILTON, )
  )
     Petitioner, ) No. 08 CV 5742
  )
     vs. ) Judge Joan H. Lefkow
  )
UNITED STATES OF AMERICA, )
  )
     Respondent. )

## OPINION AND ORDER

Petitioner, Charles Arthur Hinshaw, has filed an amended motion to vacate, set aside, or

correct his sentence pursuant to 28 U.S.C. § 2255. He challenges the 156-month sentence

imposed for his conviction on counts I, III, and IV of the superseding indictment filed on

November 5, 2002 in Case No. 91 CR 163.[1] *See* Criminal Docket No. 141.[2] Hinshaw asserts

four claims (1) denial of meaningful representation on direct appeal; (2) constitutionally

ineffective assistance of counsel; (3) use of perjured testimony at trial; and (4) double jeopardy.[3]

---

[1] Count I of the superseding indictment charges Hinshaw with conspiring to possess with intent to distribute mixtures containing phencyclidine ("PCP") with his codefendant Derrick Smiley. Count II charges Hinshaw individually with possessing mixtures containing PCP with intent to distribute. Count III charges Hinshaw with assaulting a federal officer. Count IV charges Hinshaw with knowingly failing to appear before a court between June 23, 1992 and October 25, 2001.

[2] Citations to the district court docket in Hinshaw's criminal case, No. 91 CR 163-1, will be noted in the text as "N.D. Ill. Crim. Dkt." Citations to the docket in this case will be noted as "§ 2255 Dkt. No.".

[3] Hinshaw appears to raise additional grounds for relief in his reply. To the extent those arguments are comprehensible, however, the court need not consider them because arguments raised for the first time in reply – even by a party proceeding *pro se* – are waived. *E.g.*, *United States ex rel. Lash* v. *Cooper*, 952 F. Supp. 1245, 1253 (N.D. Ill. 1996) (citing *Wilson* v. *Giesen*, 956 F.2d 738, 741 (7th Cir. 1992)); *United States* v. *Joiner*, 847 F. Supp. 604, 607 (N.D. Ill. 1994), *aff'd* 78 F.3d 586 (7th Cir. 1996).

Hinshaw also requests an evidentiary hearing. For the reasons stated herein, Hinshaw's petition and request for a hearing are denied.

## BACKGROUND[4]

Hinshaw was arrested and appeared before this court on March 5, 1991 under the alias "Charles Lee Hamilton."[5] On October 10, 1991, the original indictment was filed against him and his codefendant, Derrick Smiley.[6] Hinshaw was arraigned on October 23, 1991, entered a plea of not guilty and was released on bond. Apparently due to Hinshaw's failure to appear in court, however, his pretrial release was revoked and a bench warrant issued on May 28, 1992. *See* N.D. Ill. Crim. Dkt. No. 92. On June 9, 1992, Judge Nordberg set Hinshaw's trial for June 22, 1992 and ruled that Hinshaw would be tried *in absentia* on that date if he failed to appear. N.D. Ill. Crim. Dkt. No. 103. On June 19, 1992, however, Judge Nordberg granted an oral motion to sever and vacated his prior ruling that Hinshaw be tried *in absentia*. N.D. Ill. Crim. Dkt. No. 112. Smiley proceeded to trial alone on June 19, 1992 and was found not guilty on all counts. Hinshaw's case was reassigned to the fugitive calendar.

On October 2, 1997, while Hinshaw was a fugitive in his criminal case in Illinois, a criminal complaint was filed against him in the United States District Court for the District of Kansas, Case No. 97-cr-10125,[7] in connection with his arrest for possessing approximately 13 gallons of PCP. *See* Gov't's Mot. to Admit Certain Evidence Pursuant to Federal Rule of

---

[4] The facts in this section are derived, to the extent possible, from the electronic docket and the parties' briefs.

[5] Hinshaw proceeded with the court proceedings under this alias until April 8, 2002, when he informed the government of his real name.

[6] Counts I, II and III of Hinshaw's original indictment are identical to those alleged in the Superseding Indictment, described *supra* at n.1.

[7] The docket in the case filed against Hinshaw in federal court in Kansas will be cited as "D.C. Kan. Crim. Dkt."

Evidence 404(b) at 4 (N.D. Ill. Crim. Dkt. No. 153). When Hinshaw was arrested, he gave the

alias "Clyde A. Dawson," but the government later discovered that his fingerprints matched

those of a man named "Ron Arthur Taylor." *Id.* at 5. The government concedes that due to an

error, "the FBI [did] not associate[] the fingerprints of 'Charles Hamilton' with those of 'Ron

Arthur Taylor'" at the time Hinshaw was taken into federal custody on the charges in Kansas.

*Id.* at 5 n.3. That error was not remedied until 2001 via a comparison of arrest photographs of

"Charles Hamilton" and "Ron Arthur Taylor." *Id.*

Hinshaw was remanded into custody in Kansas on October 3, 1997. D.C. Kan. Crim Dkt.

No. 2. On April 28, 1998, he pled guilty to the federal charges brought against him there under

the name "Ron Arthur Taylor." He was sentenced to sixty months imprisonment, which he

appears to have served in California.[8] D.C. Kan. Crim. Dkt. No. 68. It is unclear when

Hinshaw was released.

On October 25, 2001, more than nine years after Judge Nordberg entered the bench

warrant against him, Hinshaw, still using an alias, was arrested in California. He was removed

from California to the Northern District of Illinois and his case was reassigned to this judge's

calendar. Hinshaw was again arraigned on the original indictment on April 8, 2002, at which

time he revealed that his true name was Charles Arthur Hinshaw. On November 5, 2002, the

government filed the superseding indictment against Hinshaw that added a fourth count for

failing to appear before a court as required in violation of 18 U.S.C. § 3146(a)(1).[9] N.D. Ill.

Crim. Dkt. No. 141. Hinshaw was arraigned on the superseding indictment on November 26,

---

[8] In the government's 404(b) brief, it states that Hinshaw gave the name "Charles Arthur Henshaw" at sentencing, *see* N.D. Ill. Crim. Dkt. No. 153 at 5, though the docket reflects that he was sentenced under the name Ron Arthur Taylor. The Federal Bureau of Prisons has an entry under the name Ron Arthur Taylor, but none under the name "Charles Arthur Henshaw."

[9] The government was granted permission to charge Hinshaw under his true name on November 13, 2002. N.D. Ill. Crim. Dkt. No. 146.

2002 and entered a plea of not guilty. He proceeded to trial on July 21, 2003, represented by Terrence Roden. Four days later, a jury convicted Hinshaw on counts I, III, and IV but acquitted him on count II, the possession charge. On February 3, 2004, Hinshaw moved to dismiss Roden as his counsel. N.D. Ill. Dkt. No. 188. Roden was replaced by Gabriel Plotkin of the Federal Defender's Office, who represented Hinshaw at the sentencing hearing on November 10, 2005, at which he received a term of 156 months' imprisonment.[10] Thereafter, Hinshaw appealed. *See United States* v. *Hinshaw*, No. 05-4502 (7th Cir. filed Dec. 5, 2005).[11]

On December 9, 2005, Plotkin filed a motion in the Seventh Circuit to withdraw as Hinshaw's attorney. On May 11, 2006, the Seventh Circuit granted Plotkin's motion and appointed Jerold Solovy of Jenner & Block LLP to represent Hinshaw on appeal. *See* N.D. Ill. Crim. Dkt. No. 271. Solovy and two other attorneys from his firm continued to represent Hinshaw on appeal for more than six months. On November 17, 2006, ten days prior to the date Hinshaw's opening brief was due, Solovy filed a motion in the Seventh Circuit to withdraw as appellate counsel. In his motion to withdraw, Solovy informed the court that he had conferred with Hinshaw, carefully researched and evaluated the grounds for relief, and diligently prepared an appellate brief which had been sent to Hinshaw for his review and approval on November 10, 2006. Shortly thereafter, however, Hinshaw informed his appointed counsel that he no longer wanted to be represented by them and refused to further discuss the matter. On November 29, 2006, the Seventh Circuit suspended briefing on the appeal and ordered Hinshaw to personally file a response to Solovy's motion to withdraw, advising it as to whether he wanted to pursue his appeal without counsel. On December 29, 2006, Hinshaw filed a motion captioned "MOTION

---

[10] As of the date of this opinion, Hinshaw is in federal custody in Northern New York.

[11] Hinshaw's original appeal was dismissed because no record was filed with the Seventh Circuit. D.C. Ill. Crim. Dkt. Nos. 259, 260. Hinshaw refiled his appeal in December 2005.

TO PROCEED ON APPEAL IN PRO-SE, AND UNDER CHARLES A. HINSHAW AND NOT

CHARLES LEE HAMILTON."  On January 17, 2007, the Seventh Circuit granted Solovy's

motion to withdraw and permitted Hinshaw to proceed *pro se* on appeal.  Hinshaw filed his

appellate brief *pro se* on March 28, 2007.  On July 5, 2007, the Seventh Circuit affirmed

Hinshaw's conviction and sentence, and denied his petition for a rehearing on September 18,

2008.  *United States* v. *Hinshaw*, No. 05-4502, 243 Fed. Appx. 179 (7th Cir. 2007) *reh'g and*

*reh'g en banc denied* (Sept. 18, 2007).  On October 8, 2008, Hinshaw filed this § 2255 petition.

## DISCUSSION

Collateral relief under 28 U.S.C. § 2255, the federal habeas corpus statute, "is reserved

for extraordinary situations."  *United States* v. *Hayes*, 397 F.3d 564, 566 (7th Cir. 2005)

(citations omitted).  The court must grant a § 2255 motion to vacate, set aside, or correct a

sentence when the petitioner establishes that the district court sentenced him "in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose

such sentence, or that the sentence was in excess of the maximum authorized by law, or is

otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  It is proper to deny a § 2255

motion without an evidentiary hearing if "the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *Cooper* v.

*United States*, 378 F.3d 638, 641-42 (7th Cir. 2004) (district court did not abuse its discretion by

denying petitioner an evidentiary hearing where petitioner did not provide additional facts or

assertions that would warrant a hearing).

## I.    Denial of Meaningful Representation on Appeal (Ground I)[12]

Hinshaw's first ground for § 2255 relief is based on his assertion that he was denied

meaningful representation on direct appeal.  Hinshaw argues that it was not his intention to

proceed *pro se* on appeal and that he wanted another attorney.  Am. Petition at 5-7.  This

argument, however, is belied by Hinshaw's December 29, 2006 filing in the appellate court in

which he made explicit his intention to proceed *pro se*.[13]  Hinshaw next argues that the Seventh

Circuit failed to adequately inquire into his ability to represent himself *pro se* on appeal.  He

bases this argument on *Farretta* v. *California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562

(1975), in which the Supreme Court ruled that a defendant must "knowingly and intelligently"

waive his right to counsel at trial.  *Id.* at 835 (citations omitted) (internal quotation marks

omitted).  This means that a defendant contemplating proceeding *pro se* at trial "should be made

aware of the dangers and disadvantages of self-representation, so that the record will establish

that he knows what he is doing and his choice is made with eyes open."  *Id.*  The type of inquiry

described in *Farreta*, however, is not required to determine whether the petitioner has

knowingly and intelligently waived counsel on appeal.  As the Seventh Circuit explained in

*Speights* v. *Frank*,[14]

---

[12] Ground one of Hinshaw's amended § 2255 petition states that the district court erred in allowing him to proceed *pro se* on appeal.  *See* Am. Petition at 4-5 (§ 2255 Dkt. No. 5).  This appears to be an error, however, because it was the Seventh Circuit, not the district court that granted Hinshaw permission to proceed *pro se*.

[13] In his amended petition, Hinshaw contends that he never responded to the Seventh Circuit and that it was his appointed counsel who informed the Seventh Circuit in their motion to withdraw that Hinshaw wanted to proceed *pro se*.  Both of these contentions are contradicted by the appellate record and will therefore be disregarded.

[14] In *Speights*, the petitioner challenged the district court's denial of his § 2254 petition, which argued, *inter alia*, that he was entitled to a new appeal in Wisconsin state court because the attorney who had been appointed to represent him on appeal withdrew without adequately warning him about the dangers of self-representation.  361 F.3d at 964.  As in this case, the petitioner premised his argument on the

(continued...)

> [W]aiver of the right to the assistance of counsel *at trial*, the stage
> of criminal prosecution most difficult for the layperson to
> navigate, may require an oral inquiry to ensure that the defendant
> chooses with knowledge of his entitlements and his eyes open to
> the dangers of self-representation.  The Supreme Court has never
> held that waivers of counsel at any stage of the proceedings other
> than trial require such a give-and-take between the accused and
> someone trying to educate him about counsel's benefits . . . .
>
> When a state allows defendants to represent themselves on
> appeal . . . it may permit them to decide without the rigmarole that
> attends waiver of counsel for trial.  Just as a simple consent to
> proceed without counsel suffices during custodial interrogation, so
> a straightforward assent is enough on appeal.

361 F. 3d 962, 964-65 (7th Cir. 2004) (citations omitted).  Accordingly, the Seventh Circuit is

merely required only to make sure a defendant's waiver of the right to counsel on appeal is

"knowing and intelligent" through its written communication.  *See Oimen* v. *McNaughty*,

130 F.3d 809, 812 (7th Cir. 1997) (affirming denial of § 2254 petition where petitioner was

instructed that if he insisted on having his appointed appellate counsel withdraw, he might not

get a second attorney, and where petitioner indicated that he would be willing to proceed *pro se*

in that event).  In this case, Hinshaw availed himself of his appointed counsel until less than two

weeks before his opening brief was due, at which time he rejected the draft prepared on his

behalf, refused to further discuss the case with his appointed counsel and caused them to file a

motion to withdraw.  In response to the Seventh Circuit's written inquiry asking him to advise

the court as to whether he wanted to pursue his appeal without counsel, Hinshaw filed a motion

requesting permission to proceed *pro se*.  Under *Speights* and *Oimen*, these facts are sufficient to

establish that Hinshaw's waiver of counsel on appeal was knowing and intelligent.  Accordingly,

Hinshaw's first ground for § 2255 relief is unavailing.

---

[14](...continued)
requirement that waivers of counsel be knowing and intelligent, but, likening waivers of counsel on
appeal to those during guilty pleas and custodial interrogations, the Seventh Circuit ruled that the
requirement did not apply in the appellate context.

## II.     Ineffective Assistance of Counsel (Ground II)

Hinshaw's second ground for relief is premised on his contention that he received ineffective assistance of counsel prior to trial.  To prevail on a claim of ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."  *Strickland* v. *Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The petitioner "bears a heavy burden in establishing an ineffective assistance of counsel claim," *United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995), particularly since the *Strickland* test "is highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices."  *United States* v. *Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (internal quotation marks omitted).

To satisfy the performance prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel.  *Fountain* v. *United States*, 211 F.3d 429, 434 (7th Cir. 2000) (citing *Trevino*, 60 F.3d at 338).  The court must then consider whether, in light of all of the circumstances, counsel's performance was outside the range of professionally competent assistance.  *Id*.  To establish prejudice prong, the petitioner must show "a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong.  *United States* v. *Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (citing *Matheney* v. *Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

In this case, Hinshaw contends that he received ineffective assistance of counsel because his attorney failed to request dismissal of the indictment due to pretrial delay. Hinshaw's argument may be interpreted as arising under the provisions of the Speedy Trial Act, codified at 18 U.S.C. § 3161 *et seq*., or under the Sixth Amendment's right to a speedy trial.

### A. Failure to Request Dismissal under the Speedy Trial Act

"In federal prosecutions, the Speedy Trial Act provides that a defendant's trial must commence within seventy days of the filing date of the information or indictment, or of the defendant's initial appearance, whichever comes later." *United States* v. *Harris*, 567 F.3d 846, 849 (7th Cir. 2009) (citing 18 U.S.C. § 3161(c)). Certain periods of time are excluded from this seventy day deadline under § 3161(h), which provides, in pertinent part,

> (h) The following periods of delay shall be excluded in computing the time within which . . . the trial of any such offense must commence:
>
> *     *     *     *
>
> (3) (A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.
> (B) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. For purposes of such subparagraph, a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

18 U.S.C. § 3161(h). If the government fails to comply with the Speedy Trial Act, the indictment shall be dismissed on the motion of the defendant. *Id.* § 3162(2). In determining whether to dismiss a case with or without prejudice the court shall consider (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *Id.* Hinshaw contends that a Speedy Trial Act violation occurred in

his case because nearly twelve years elapsed from the date on which he was indicted,

October 10, 1991, to the date on which his trial began, July 21, 2003. Hinshaw fails, however, to

identify the specific periods not excluded – either by order of court or by virtue of Hinshaw's

own actions – from the seventy day requirement. Nevertheless, the court's own review of the

docket reveals no Speedy Trial Act violation.

    **1.    The Time Elapsed from Hinshaw's Arraignment to Judge Nordberg's Issuance of a Bench Warrant for his Arrest**

Hinshaw initially appeared at his arraignment on October 23, 1991, at which time the

speedy trial clock began to run. *See United States* v. *Montoya*, 827 F.2d 143, 152 (7th Cir. 1987)

("The seventy-day period thus begins on the latter of two events: (1) the indictment or (2) the

defendant's appearance before a judge of the court in which such charge is pending." (citations

omitted) (internal quotation marks omitted)). Thereafter, Judge Nordberg entered a series of

minute orders excluding time through the June 22, 1992, the date on which Hinshaw and his

codefendant were set to go to trial. *See* N.D. Ill. Crim. Dkt. Nos. 34, 72, 96, 104. Hinshaw

absconded prior to trial, however, and a bench warrant was issued for his arrest on May 28,

1992. N.D. Ill. Crim. Dkt. No. 92. Thus, no days accrued on the speedy trial clock from

Hinshaw's arraignment to the date on which the bench warrant was issued. Hinshaw has not

demonstrated, nor argued, that the trial judge's exclusions of time were contrary to the Speedy

Trial Act.

## 2. The Time Elapsed While Hinshaw was a Fugitive

The operative issue is whether Hinshaw's nearly ten years[15] as a fugitive are excludable under 18 U.S.C. § 3161(h)(3)(b). Hinshaw appears to argue that his whereabouts were not unknown within the meaning of that section given that he was in federal custody for at least part of that period. The record shows, however, that due to an error, the government did not associate "Ron Arthur Taylor," the alias which Hinshaw used in connection with the federal charges brought in Kansas, with "Charles Lee Hamilton," the alias Hinshaw had used in connection with the federal charges pending in this district. Absent any evidence that the government actually knew Hinshaw was in prison in Kansas, the court finds Hinshaw's assertion that his whereabouts were not unknown while he was a fugitive in this case unavailing.[16]

Hinshaw also appears to argue that he was not avoiding apprehension or prosecution within the meaning of § 3161(h)(3)(B) because his codefendant informed him that he was tried *in absentia* and acquitted. This argument is incredible. Hinshaw was not tried *in absentia* with his codefendant; rather, their trials were severed and Judge Nordberg struck his previous order to that effect. *See* N.D. Ill. Crim. Dkt. No. 112. Had Hinshaw not fled prosecution, he would have had no cause to be mistaken as to whether he was tried and acquitted. At the very least, it is unbecoming for Hinshaw to attempt to use a situation he created as an excuse for his continued absence. Morever, Hinshaw's contention that he was not avoiding apprehension or prosecution in connection with the charges pending against him in this district is belied not only by his continued engagement in criminal activity, which resulted in his imprisonment on the charges

---

[15] Prior to trial, Hinshaw failed to appear in court and a bench warrant was issued for his arrest on June 3, 1992. *See* N.D. Ill. Crim. Dkt. Nos. 92, 95, 103. That warrant was not executed until October 25, 2001, when Hinshaw was arrested in California. N.D. Ill. Crim. Dkt. No. 128. He was arraigned before this court on April 8, 2002. N.D. Ill. Crim. Dkt. No. 132.

[16] Hinshaw does not contend that the government knew of his whereabouts before or after serving his sentence in Kansas.

brought in Kansas, but also by his persistent use of aliases, which delayed his prosecution. To the extent Hinshaw is also arguing that the period during which he was a fugitive was not excludable under § 3161(h)(3)(b) because the government did not exercise due diligence in locating him, the court need not consider this argument because it has determined that Hinshaw was attempting to avoid apprehension or prosecution in the Illinois case. The court therefore concludes that the period during which Hinshaw was a fugitive, from May 28, 1992, when the bench warrant was issued for his arrest, to April 8, 2002, the first time he appeared before this court after having been arrested in California on that warrant, is excludable under 18 U.S.C. § 3161(h)(3)(b).[17] Accordingly, the only period during which days on the speedy trial clock might have accrued occurred after Hinshaw was returned to Illinois.

### 3. The Time Elapsed from Hinshaw's Second Arraignment on the Original Indictment to Trial

After Hinshaw was arrested in California on the outstanding bench warrant, he was arraigned before this court on April 8, 2002, at which time it excluded time through and including June 17, 2002. N.D. Ill. Crim. Dkt. No. 132. Subsequently, the court excluded time through and including September 9, 2002, the date on which a status hearing was scheduled. *See* N.D. Ill. Crim. Dkt. Nos. 134, 135. On that day, however, neither party appeared and the court continued the status to September 18, 2002. N.D. Ill. Crim. Dkt. No. 139. Accordingly, the government admits that nine days accrued on the speedy trial clock. *See* Gov't's Resp. to § 2255 Petition at 9. At the next status, the court excluded time through the trial date, which was reset to November 18, 2002.[18] On November 5, 2002, however, the government filed the Superseding

---

[17] Time is excludable through April 8, 2002, because Hinshaw was unavailable until that date.

[18] While the minute order entered on September 18, 2002 does not indicate the date through which time was excluded, the court's review of the record of the telephonic status hearing held on that date reveals that time was, in fact, excluded through November 18, 2002. *See* Transcript of September 18, 2002

(continued...)

Indictment on which Hinshaw was scheduled to be arraigned on November 13, 2002. On that date, the arraignment was reset to November 26, 2002 and time was excluded through that date. N.D. Ill. Crim. Dkt. No. 146. Time was thereafter excluded for the rest of the days before which Hinshaw ultimately went to trial, on July 21, 2003. *See* N.D. Ill. Crim. Dkt. Nos. 147, 154, 156, 159, 161, 163.

Because only nine days appear to have elapsed under the Speedy Trial Act, no violation occurred. Accordingly, Hinshaw cannot show that his attorney's performance was defective for failing to request dismissal on that basis. To the extent Hinshaw's petition is premised on this basis, it must be denied.

### B. Hinshaw's Attorney's Failure to Raise a Sixth Amendment Speedy Trial Claim

Hinshaw's second ineffective assistance argument, is premised on his attorney's failure to move for dismissal pursuant to the sixth amendment's guarantee of a speedy trial. At the outset, the court is mindful that "although no provision of the Speedy Trial Act is intended to bar any sixth amendment speedy trial claim, it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated." *See United States* v. *Nance*, 666 F.2d 353, 360 (9th Cir. 1982) (citations omitted) (internal quotation marks omitted).

The Sixth Amendment ensures all criminal defendants the right to a speedy and public trial. U.S. Const. amend. VI. This constitutional right, however, "is a more vague concept than other procedural rights." *Barker* v. *Wingo*, 407 U.S. 514, 521, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Although it is "impossible to determine with precision when the right [to a speedy

---

[18](...continued)
Telephonic Status at 4:23-5:17, attached to the instant Opinion & Order.

trial] has been denied," *id*. at 521, the appropriate analysis is "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id*. at 530. Four factors the court should consider are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id*. The length of the delay is a triggering mechanism that provokes further inquiry into the other factors. *Id*. "[B]arring extraordinary circumstances," a court will be reluctant to rule that a defendant was denied his constitutional right to a speedy trial "on a record that strongly indicates . . . that the defendant did not want a speedy trial." *Id*. at 536. The nearly twelve-year delay between Hinshaw's original indictment and conviction is extraordinary and sufficient to trigger further inquiry into the remaining *Baker* factors. *See United States* v. *Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007) ("We have considered delays that approach one year presumptively prejudicial."). An analysis of the remaining factors reveals, however, that Hinshaw's sixth amendment right was not violated.

### 1.      The Reason for the Delay

The second *Barker* factor involves a determination of the party most at fault for the delay and is of such importance that the Supreme Court has referred to it as "the flag all litigants seek to capture." *See Williams* v. *Bartow*, 481 F.3d 492, 506 (7th Cir. 2007) (quoting *United States* v. *Loud Hawk*, 474 U.S. 302, 615, 106 S. Ct. 648, 88 L. Ed. 2d 640 (1986)). Hinshaw contends that the second *Barker* factor should not weigh against him because the delay in prosecuting him is attributable to the government's negligence in pursuing him, particularly its failure to discover him while he was in federal custody in California, rather than his own conduct. At the outset, the court notes that Hinshaw's argument fails to address the period of delay from May 1992, when Hinshaw fled prosecution in this court, to October 1997, when Hinshaw was remanded to

federal custody on unrelated charges in Kansas. *See* D.C. Kan. Crim. Dkt. No. 23. Hinshaw's dubious contention that he was not actively avoiding prosecution during this period because he believed that he had been tried *in absentia* and acquitted is belied by his decision to flee Illinois, his continued engagement in criminal conduct in Kansas, and his persistent use of a myriad of aliases. Accordingly, the court must attribute the delay of nearly five and a half years to Hinshaw's own conduct.

In support of his argument that the government is at fault for the delay beginning when he was remanded into federal custody on underlying charges, Hinshaw relies on the Supreme Court's decision in *Doggett* v. *United States*, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). There, the Supreme Court ruled that an eight and a half year delay between the defendant's indictment and arrest violated his right to a speedy trial because the government was negligent in pursuing him during that period. Hinshaw's reliance on *Doggett*, however, is unavailing because Hinshaw's conduct materially differs from that of Doggett. Doggett was indicted in a drug conspiracy in 1980. *Id.* at 648. When police offers attempted to arrest him, they discovered he had left the country prior to learning of the charges against him. *Id.* at 649-50. The government undertook certain measures to apprehend him upon his return to the United States, but those measures eventually lapsed. *Id.* Doggett returned to the United States undetected in 1982. *Id.* Although he lived openly under his own name from that time, the government did not discover Doggett until 1988, when it ran a mass credit check on individuals with outstanding warrants. *Id.* Doggett challenged the denial of his motion to dismiss the indictment, arguing that the government was at fault for the delay. The Supreme Court agreed, ruling that the second *Barker* factor weighed against the government because the delay was

caused by its negligence in failing to pursue Doggett, not by any misconduct on his part. *Id.* at 653.

Unlike *Doggett*, where the defendant was unaware of the charges against him until his arrest over eight years after his indictment, Hinshaw was aware of the charges against him, had participated in his criminal proceeding in this district and had a date scheduled for trial. Hinshaw chose to delay that date by fleeing the jurisdiction and successfully avoiding prosecution for the next ten years through the use of different aliases. Therefore, Hinshaw's own conduct was the root cause of the delay of which he complains. Although the government erred in failing to link Hinshaw – for example, by fingerprint analysis – to the criminal case pending in this court while he was in federal custody on the federal charges brought against him in Kansas, Hinshaw does not contend, and nothing in the record suggests, that this error was intentional. Accordingly, the court finds that any delay which resulted from this error does not weigh heavily against the government. Rather, the overwhelming majority of the blame for the delay in Hinshaw's trial rests with Hinshaw because he skipped bail and actively concealed his true identity in order to avoid prosecution. *See United States* v. *Arceo*, 535 F.3d 679, 684-86 (7th Cir. 2008) (second *Barker* factor weighed against defendant who fled after his arrest and lived under an assumed name even though government's negligence in failing to issue warrant contributed to delay); *United States* v. *Mitchell*, 957 F.2d 465, 469 (7th Cir. 1992) (second *Barker* factor weighed heavily against defendant where his decision to flee to Colombia was the root cause of the delay, which was exacerbated by the country's internal battles over extradition procedures). The second *Barker* factor therefore weighs heavily against Hinshaw's Sixth Amendment claim.

## 2. The Defendant's Assertion of his Right

Hinshaw could have ceased using aliases, revealed his fugitive status or demanded trial at any time during the nearly ten years which elapsed after he fled from prosecution in this district.[19] His failure to do so weighs heavily against him under the third *Barker* factor. *See Mitchell*, 957 F.2d at 469 (the defendant's failure to demand trial, waive extradition or otherwise seek return to the United States for trial rendered the third factor a negative for defendant).

## 3. Prejudice to the Defendant

The fourth *Barker* factor is analyzed "in the light of the interests the defendant's speedy trial right is intended to protect: (I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility the defense will be impaired." *Oriedo*, 498 F.3d at 600 (citations omitted) (internal quotation marks omitted). Because Hinshaw was a fugitive for nearly ten years and actively avoided prosecution, he does not, and cannot, assert any impairment of the first two interests. While Hinshaw fails to identify specific ways in which his defense was impaired by the delay, he does contend that its extraordinary length warrants a presumption of prejudice. A presumption of prejudice, however, is "insufficient to carry a speedy trial claim absent a strong showing on the other *Barker* factors." *Oriedo*, 498 F.3d at 600-01 (delay of three years was insufficient to constitute a Sixth Amendment speedy trial violation where the fault for delay was shared, the defendant did not unambiguously or consistently assert his right to a speedy trial, and impairment to the defense function was intangible). As discussed, the other *Barker* factors weigh strongly against

---

[19] Hinshaw also failed to raise the speedy trial issue until after trial. *See* "Nunc Pro Tunc Motion to Dismiss for Speedy Trial Act Violation," filed August 21, 1997 (Criminal Docket No. 289). Because Hinshaw's § 2255 petition is based on his counsel's failure to raise this issue, however, the court will not weigh this failure against Hinshaw for the purposes of this motion.

Hinshaw. Moreover, there is no tangible evidence that Hinshaw's defense was impaired; in fact, Hinshaw was actually acquitted of the possession charge at trial.

Because the second, third and fourth *Barker* factors would have weighed heavily against a Sixth Amendment speedy trial claim, the court cannot conclude that Hinshaw's attorney rendered him ineffective assistance due to his failure to challenge the indictment on that basis. Accordingly, Hinshaw's § 2255 petition, to the extent it is based on a potential violation of his Sixth Amendment rights, must be denied.

## III.    Use of Perjured Testimony at Trial (Ground III)

Hinshaw contends that the government knowingly used perjured testimony at his trial. In support, Hinshaw points to inconsistencies in the record, which he claims demonstrate a violation of his due process rights, but fails to explain how the inconsistencies, to the extent that they exist, actually amount to false or perjured testimony. Accordingly, Hinshaw's third ground for relief amounts to nothing more than a challenge to the credibility of the witnesses at his trial, an issue that cannot be raised for the first time on collateral attack. *Bontkowski* v. *United States*, 850 F.2d 306, 313 (7th Cir. 1988) ("[N]onconstitutional errors which could have been raised on appeal but were not, are barred on collateral review – regardless of cause and prejudice." (citation omitted)); *Norris* v. *United States.*, 687 F.2d 899, 900 (7th Cir. 1982) ("[T]he credibility of a witness is not a constitutional issue."). Because Hinshaw failed to raise the issue of witness credibility on appeal, he has waived his ability to do so on collateral attack. *Id.* Accordingly, to the extent Hinshaw's petition is based on the alleged use of perjured testimony at trial, it fails.[20]

---

[20] Hinshaw also argues that his conviction violates the Double Jeopardy Clause of the Fifth Amendment
(continued...)

## CONCLUSION AND ORDER

For the reasons discussed above, defendant's § 2255 petition and request for an evidentiary hearing are denied.


Dated: February 16, 2010                    Enter: _____

                                            JOAN HUMPHREY LEFKOW
                                            United States District Judge

---

[20](...continued)
because he was allegedly tried and acquitted *in absentia* in 1991. Hinshaw's double jeopardy claim is without merit because, as discussed, Hinshaw was not tried *in absentia*.

```
 1                 IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
     UNITED STATES OF AMERICA,          )  No. 91 CR 163
 4                                       )
                    Plaintiff,           )
 5                                       )
                    vs.                  )
 6                                       )
     CHARLES ARTHUR HINSHAW,             )  Chicago, Illinois
 7                                       )  September 18, 2002
                    Defendant.           )  9:40 A.M.
 8
                 TRANSCRIPT OF PROCEEDINGS - Telephone status
 9            BEFORE THE HONORABLE JOAN HUMPHREY LEFKOW

10   APPEARANCES:

11
     For the Government:        HON. PATRICK J. FITZGERALD
12                              219 South Dearborn Street
                                Chicago, Illinois  60604
13                              BY:  MR. DAVID A. GLOCKNER

14
     For the Defendant:        LAW OFFICE OF TERRENCE A. RODEN
15                              333 South Grand Avenue
                                33rd Floor
16                              Los Angeles, California 90071
                                BY:   MR. TERRENCE A. RODEN
17                              (Appearing telephonically)

18
                         PAMELA S. WARREN, CSR, RPR
19                          Official Court Reporter
                          219 South Dearborn Street
20                               Room 1928
                          Chicago, Illinois   60604
21                            (312) 294-8907

22

23

24

25
```

1    (Proceedings had in chambers.)

2    (Telephone status.)

3         THE CLERK:  91 CR 163, USA versus Hamilton.

4         MR. GLOCKNER:  David Glockner for the United States.

5         THE COURT:  Good morning.

6    And good morning, Mr. Roden.

7         MR. RODEN:  Good morning, your Honor.

8         THE COURT:  Can you hear me?

9         MR. RODEN:  Yes, I can.  Thank you.

10         THE COURT:  Okay.  Mr. Glockner.

11         MR. GLOCKNER:  Good morning.  Your Honor, I apologize

12   for the mix up at the last status.  I had put this down on the

13   wrong date and was not here.  Mr. Roden was available, but that

14   was my mix up.

15         We are currently scheduled for trial October 1st.

16   That date I think is not realistic at this point.

17         MR. RODEN:  I am having great difficulty hearing

18   anybody.

19         THE COURT:  Can you hear us now?

20         MR. RODEN:  Can you hear me?

21         THE CLERK:  Yes.

22         MR. GLOCKNER:  Can you hear me?

23         THE COURT:  We want to make sure you can hear them

24   okay.

25         MR. RODEN:  I can hear you very well.

1          THE COURT:  Okay.  Let's give it a try.  Go ahead.

2          MR. GLOCKNER:  The Court had asked me for an

3     explanation of the status of the case in saying -- can you hear

4     me, Mr. Roden?

5          Can you hear us, Mr. Roden?

6          MR. RODEN:  You are breaking up.

7          MR. GLOCKNER:  Okay.  I was attempting to explain the

8     status of the case to the court.  We are currently set for

9     trial October 1st.  And I was explaining that that date is not

10    realistic at this point in light of difficulties that we have

11    been having getting the DEA lab to coordinate with the lab

12    that's going to do the defense split.  The DEA lab in Chicago

13    has been having some trouble kind of getting its arms around

14    the procedure for handling a split.  It is not something that

15    they are used to doing here.

16         I think we have worked through those difficulties.

17    The lab director assured me this morning that the sample would

18    go out to the California lab in a week.  And that the remainder

19    of the drugs, which the order requires to be made available for

20    weighing by the defense lab, will be transferred then to

21    California, and a DEA agent will take custody of those drugs

22    and then physically walk them over to the California lab where

23    the California lab can weigh the reminder.

24         And as I understand it from Mr. Roden that process is

25    acceptable to him.

1          Can you still hear us?

2          MR. RODEN:  That is correct, yes.

3          MR. GLOCKNER:  But in light of the fact that we have

4    not yet been able to get the drugs to Mr. Roden's lab, that lab

5    is going to need time to perform its analysis and Mr. Roden

6    will need some time to evaluate the results.

7          And I think that there really is no way that this is

8    going to be able to be accomplished in time to make the October

9    1st date workable.

10         MR. RODEN:  I concur.

11         THE COURT:  Okay.  So what's a date that you

12   anticipate being able to go forward?

13         MR. GLOCKNER: Mr. Roden?

14         MR. RODEN:  Your Honor, I discussed with Mr. Glockner

15   as late as this morning what we thought to be a feasible date,

16   and I thought a date that six to eight weeks out would be.

17         There were some additional items of discovery that

18   Mr. Glockner said that he was going to send out hopefully by

19   the end of this week also which are germane to the defense.

20         So a date at the end of October or beginning of

21   November that is convenient with the Court would be acceptable

22   and desirable by the defense.

23         MR. GLOCKNER:  And that's fine with us.

24         And again, your Honor, our estimate is this should be

25   no more than a three-day trial.

1          THE COURT:  Okay.  And it is a jury, I assume?

2          MR. GLOCKNER:  Yes, I assume.

3          THE CLERK:  November 18th or November 12th, either

4    date.  We could move somebody off the November 12th date, we

5    could -- and the 18th there is nothing set.

6          THE COURT:  Let's go to the 18th then.

7          MR. RODEN:  That's fine.

8          THE COURT:  Okay.  All right then.

9          MR. RODEN:  What time would that be at?

10          THE CLERK:  10:00 o'clock.

11          MR. GLOCKNER:  Will time be excluded through that

12    date?

13          MR. RODEN:  Yes.

14          THE COURT:  All right.  Motion granted and then let's

15    just set a date as well for your jury instructions, any

16    disputes on motions to exclude evidence, about ten days in

17    advance of trial.

18          MR. GLOCKNER:  That's fine.

19          THE COURT:  So that puts us at about November the 6th.

20          MR. GLOCKNER:  That's fine.

21          THE COURT:  Okay.

22          MR. RODEN:  What was the last date, please?

23          THE COURT:  November 6th.

24          MR. RODEN:  Okay.  What time was it?

25          THE COURT:  That's just a filing date for -- I would

1 like you to meet together in advance and work out your jury

2 instructions, any evidentiary issues that I have to rule on,

3 and get all of that to me by November the 6th.

4          Also we'll need a proposed voir dire and a brief

5 statement of the case that can be read to the jury.

6          MR. RODEN:  And the trial is set what time on the

7 18th?

8          THE COURT:  10:00 o'clock.

9          MR. RODEN:  Those dates are fine with me.

10          THE COURT:  Good.

11          MR. GLOCKNER:  And with me.

12          THE COURT:  All right.  Let's plan on it.

13          MR. RODEN:  Thank you very much.

14          MR. GLOCKNER:  Thank you, Judge.

15      (Which concluded the proceedings in the above-entitled

16 matter.)

17                          CERTIFICATE

18          I HEREBY CERTIFY that the foregoing is a true, correct

19 and complete transcript of the proceedings had at the hearing

20 of the aforementioned cause on the day and date hereof.

21

22 /s/pamela S. warren
   Official Court Reporter                    Date
23 United States District Court
   Northern District of Illinois
24 Eastern Division

25